**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| K. Marie,<br><br>                Plaintiff,<br><br>v.<br><br>Arizona Department of Economic Service, et al.,<br><br>                Defendants. | No. CV-17-03167-PHX-DJH<br><br>**ORDER** |

This matter is before the Court on Cross-Motions for Summary Judgment.[1] *Pro se* Plaintiff filed a Motion for Summary Judgment and a corresponding separate Statement of Facts. (Docs. 107 and 108). Defendants filed a Response and Cross-Motion for Summary Judgment, along with a separate Statement of Facts and a Controverting Statement of Facts. (Docs. 111, 112, and 113). Plaintiff filed a Response to the Cross-Motion for Summary Judgment and a Controverting Statement of Facts. (Docs. 118 and 121). Plaintiff filed a Reply in support of her Motion for Summary Judgment. (Doc. 119). Defendants filed a Reply in support of its Cross-Motion for Summary Judgment. (Doc. 123).[2]

**I.    Background**

Plaintiff filed her Complaint on September 14, 2017 (Doc. 1), a First Amended

---

[1] Both parties requested oral argument in this matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Defendants later withdrew an exhibit improperly filed with the Reply. (Doc. 124).

Complaint on February 12, 2018 (Doc. 7), and a Second Amended Complaint ("SAC") on June 1, 2018 (Doc. 21).[3] Plaintiff's SAC alleges that Defendants violated Title II of the Americans with Disabilities Act of 1990 (the "ADA"), Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), and the First and Ninth Amendments to the Constitution. Plaintiff seeks injunctive relief, four million dollars in compensatory damages and two million dollars in punitive damages. (*Id.*) Plaintiff also seeks a number of public policy requests, including that the Court order the State of Arizona to provide four hours of in person "interactive/experiential" disability training to all current and future employees, and that the State award millions of dollars in grants to the Arizona State School for the Deaf and Blind and the Arizona Center for the Blind over the next ten years. (*Id.* at 15-17).

Plaintiff is blind, and does not read braille. (Doc. 21 at ¶ 8). She relies on other means of technology to read documents, such as screen reading software that makes text documents audible, and the help of others to read documents to her. (*Id.*) Plaintiff receives Supplemental Nutrition Assistance Program ("SNAP") benefits and health care benefits from the State. (*Id.* at ¶¶ 5, 9). These programs are administered by Defendant Arizona Department of Economic Services ("DES"). Plaintiff alleges that she first attempted to apply for benefits in May 2014, but that the DES website was not arranged in a way that was accessible to blind individuals, making it impossible for her to apply for benefits. (*Id.* at ¶ 12). Plaintiff contacted DES about her problems accessing the website, including by sending a letter to the Director of DES, and by contacting several agency employees by telephone. (*Id.*)

Plaintiff was contacted by a DES employee who assisted her in enrolling in SNAP and a health care benefit program. (*Id.*) However, Plaintiff alleges that Defendants failed to provide her reasonable accommodations that would enable her to receive updates about her benefits, and that the failure to provide these accommodations resulted in her benefits

---

[3] Plaintiff attempted to file a fourth complaint (Doc. 61), which was stricken for failure to seek leave to file an amended complaint. (Doc. 79). Thus, Plaintiff's SAC is the operative complaint.

being "terminated/interrupted" on at least two occasions. (Doc. 21 at 3). She alleges that Defendants acted intentionally and with deliberate indifference, and as a result of Defendants' failure to provide her a reasonable accommodation, she has suffered "humiliation, frustration, and distress." (*Id.*) Defendants contend that they not only provided Plaintiff reasonable accommodations, but the specific accommodations that Plaintiff requested. (Doc. 111).

The Court previously granted, in part, DES's Motion for Judgment on the Pleadings. (Doc. 102). Therein, the Court dismissed Plaintiff's punitive damages claim and her First and Ninth Amendment Claims. (*Id.*) Remaining are Plaintiff's ADA and Rehabilitation Act claims, and her requests for compensatory damages and injunctive relief.

### A. Plaintiff's 2014 Accommodation Request

Unless otherwise noted, the following facts are not in dispute. Plaintiff sent a letter to DES invoking the ADA in 2014, requesting that, because of her visual impairment, any correspondence from DES be communicated to her by "verbal and/or/audio communication." (Doc. 108 at 45). Likewise, Plaintiff's SAC alleges that she requested "correspondence in an audible form." (Doc. 21 at 5). Within two weeks of receiving Plaintiff's request, DES arranged for employee Sue Quayle to serve as a qualified reader for Plaintiff, whereby Ms. Quayle would audibly read Plaintiff's correspondence to her over the phone in accordance with Plaintiff's written accommodation request. (*Id.* at 52). Ms. Quayle's role was to periodically check Plaintiff's account for any correspondence that had been issued, and to call Plaintiff and read the correspondence to her. (Doc. 113-1 at 52-53). In 2014, Ms. Quayle also provided a number of additional accommodations to Plaintiff, including giving Plaintiff her personal cell phone number so that Plaintiff could call or text Ms. Quayle at any time. (*Id.*)

Defendants acknowledge a couple of instances where a letter was missed by Ms. Quayle, including an incident where Plaintiff missed a deadline to reapply for benefits

and was temporarily disenrolled. (Doc. 112-1 at 14). However, that incident was promptly corrected and did not result in any loss in SNAP or Medical Assistance benefits or any financial loss to Plaintiff. (*Id.*) In May of 2016, Plaintiff sent a letter to Ms. Quayle stating, "I still require, as a reasonable accommodation, audio contact by phone, text, or email. The latter two being accessible by my phone." (Doc. 112 at 4; Ex. F).

### B. 2017 Notice of Claim

In June of 2017, in the course of preparing for this litigation, Plaintiff submitted a Notice of Claim with the Arizona Attorney General, formally requesting that correspondence be sent to her in an electronically readable format rather than receiving the information verbally over the telephone. (Doc. 21; Doc. 112 at 5). Within a few weeks of receiving the Notice of Claim, DES employee Monica Sheble reached out to Plaintiff to determine exactly what accommodation she was requesting. (*Id.*) Plaintiff told Ms. Sheble that she would like correspondence to be emailed to her, rather than read over the phone. (*Id.*) Ms. Sheble recommended to her supervisor that Plaintiff be provided with her newly requested accommodation and the Deputy Director of DES Operations agreed. (Doc. 112 at 6). Within weeks of the request, Defendants thereafter began to train employees, including Ms. Quayle, on how to facilitate Plaintiff's new accommodation request. (Doc. 111 at 4). Since 2018, DES converts Plaintiff's notices into a searchable PDF and sends them to her over email.[4] (*Id.* at 2). Plaintiff agrees that she has received this accommodation starting in 2018, but requests a permanent injunction in order to ensure that the accommodation remains in place. (Doc. 21).

## II. Summary Judgment Standard

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[4] Plaintiff alleges that she received a few letters in the mail after her 2017 request that were never converted. Defendants provide evidence that those mailings originated outside of DES, including a mailing Plaintiff refers to as a "Summer Lunch Buddies" program flyer that originated with the Department of Health Services ("DHS"). (Doc. 112-1 at 48-50). DHS is not a party in this case. These flyers were part of a "targeted zip code mailing" that went out to all DHS clients in Plaintiff's zip code. Since the time of that mailing, DES now also converts all outside notices for Plaintiff as well.

of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines which facts are material. *Id.* The dispute must also be genuine, meaning the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 242.

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. However, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### III. Legal Standards[5]

Plaintiff's SAC alleges claims arising out of the ADA, the Rehabilitation Act, and seeks compensatory damages and injunctive relief.

---

[5] Plaintiff did not cite to any applicable legal standard with respect to her Motion, stating only that she is "confident the Court knows its role in deciding MSJ." (Doc. 119 at 1). Plaintiff, without legal support, also argues the Court should disregard all of the case law cited by Defendants and "treat this case as one of first impression." (*Id.* at 2).

- 5 -

### A. ADA & Rehabilitation Act[6]

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, a plaintiff bears the burden of proving that: "(1) [s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of h[er] disability." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997).

The implementing regulations for Title II provide that a public entity must "take appropriate steps to ensure that communications" with persons with disabilities "are as effective as communications with others." 28 C.F.R. § 35.160(a). The regulations require public entities to "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service program, or activity conducted by a public entity." 28 C.F.R. § 35.160(b)(1). The regulations provide that the "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual," and that "a public entity shall give primary consideration to the requests of individuals with disabilities." *Id.* § 35.160(b). The following are listed as options of acceptable auxiliary aids for individuals with visual impairments: "Qualified readers; taped texts; audio recordings; Brailled materials and

---

[6] The ADA and Section 504 of the Rehabilitation Act are governed by the same legal standards. *See Zulke v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (describing the ADA and Rehabilitation Act as creating the same rights and obligations and that cases interpreting either are applicable and interchangeable).

displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods." 28 C.F.R. § 35.104(2).

The plaintiff bears the burden of establishing an ADA violation, so "she must establish the existence of specific reasonable accommodations that [the defendant] failed to provide," as well as how the accommodations offered by the defendant were not reasonable. *Memmer v. Marin Cty. Courts,* 169 F.3d 630, 633-634 (9th Cir. 1999). But courts do not interpret the ADA as requiring a *perfect* accommodation. *See e.g., Updike v. Multnomah County*, 870 F.3d 939, 951-52 (9th Cir. 2017) (finding no ADA violation where State failed to timely provide an ADA accommodation due to "bureaucratic slippage," even though such error caused plaintiff to spend an extra night in jail); *Tennessee v. Lane*, 541 U.S. 509, 511 (2004) ("Title II does not require States to employ any and all means [in devising an accommodation]. It requires only reasonable modifications that would not fundamentally alter the nature of the service provided."); *Loye v. Cty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010) (affirming finding that plaintiff received effective accommodation under the ADA "even if at times delayed"). Where a plaintiff fails to establish that a provided accommodation is not reasonable, a court may properly grant summary judgment in favor of defendants. *Id.*

**B.    Compensatory Damages under the ADA & Rehabilitation Act**

"Compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent." *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998), *as amended* (Oct. 8, 1998). To show discriminatory intent, a plaintiff must establish that a defendant acted with "deliberate indifference," which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). "When the plaintiff has alerted the public entity to [her] need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the

plaintiff has satisfied the first element of the deliberate indifference test." *Id.* To meet the second prong, the entity's failure to act "must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

### C. Injunctive Relief

A permanent injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.,* 555 U.S. 7, 24 (2008). A plaintiff seeking a permanent injunction must show "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Moreover, a plaintiff must prevail on the merits of her claim in order to receive injunctive relief requested. *See Ctr. for Biological Diversity v. Mattis,* 868 F.3d 803, 827 (9th Cir. 2017) (courts consider elements necessary to obtain injunctive relief only after plaintiff prevails on the merits of her case).

### IV. Analysis

Both parties seek summary judgment as to all of Plaintiff's claims. (Docs. 107 and 111). Plaintiff asserts claims under Title II of the ADA and Section 504 of the Rehabilitation Act. Under both of these provisions, Plaintiff must show that she was excluded from participating in or denied the benefits of Defendants' services or otherwise discriminated against because of her disability. *See Weinreich,* 114 F.3d at 978. Neither party disputes that Defendants are public entities within the meaning of Title II. Likewise, Defendants do not contest that Plaintiff, who is blind, has a disability pursuant to the statute. The parties also agree that Defendants were obligated to provide reasonable accommodations to Plaintiff. Rather, Plaintiff's case centers on her arguments that she requested additional accommodations from Defendants that were not provided until years after she requested them. (Doc. 107). Because Plaintiff's ADA and Rehabilitation Act claims arise from the same set of facts, the Court will address them

together. *See Updike*, 870 F.3d at 951.

With her Motion for Summary Judgment, Plaintiff filed a Separate Statement of Facts. (Doc. 108). As an initial matter, a number of the fact statements made therein do not cite to admissible evidence in the record. For instance, four fact statements cite to allegations in her unverified SAC, one cites to unverified allegations in her Motion for Preliminary Injunction, and ten statements contain no citations at all. (*Id.*)[7] The same is true with the entirety of Plaintiff's Reply in support of her Motion and her Controverting Statements of Fact, which contain no citations to the record, but rather a number of statements that are inconsistent with the record and are self-serving.

The Court cannot rely on unverified statements of fact. *See* Fed. R. Civ. P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, [and] set out facts that would be admissible in evidence. . ."); *see also Borbon v. City of Tucson*, 556 P.2d 1153, 1154 (1976) ("court may not take cognizance of positions regarding the facts based upon exhibits that are merely parts of the briefs and have not been otherwise verified or supported."). Moreover, a "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 (9th Cir. 2007). Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991).

Plaintiff tries to convince the Court that there are genuine disputes of material fact by relying on conclusory allegations, unsupported statements, and speculation. While she disputes almost all of Defendants' evidence and facts, she does not cite to admissible evidence to contradict those facts. Plaintiff's unsupported statements are self-serving and

---

[7] For instance, Plaintiff states that when Ms. Quayle began reading notices to her, "Plaintiff explained that would **not** be sufficient." (Doc. 108 at 3). Plaintiff does not cite to any evidence to establish this alleged statement of fact.

are not looked upon favorably.[8] Moreover, they are in direct conflict with her sworn deposition testimony. The Court cannot consider these statements. Because Plaintiff has not provided admissible evidence to contradict Defendants' evidence, affidavits, and declarations, Defendants' statements of fact are deemed unopposed.[9]

### A. ADA & Rehabilitation Act Claims

Plaintiff bears the burden of establishing an ADA violation, so "she must establish the existence of specific reasonable accommodations that [the defendant] failed to provide," as well as how the accommodations offered by the defendant were not reasonable. *Memmer,* 169 F.3d at 633-34. Plaintiff cannot do so here. While the parties clearly disagree on many facts, none preclude the entry of summary judgment.

#### 1. Plaintiff's 2014 Accommodation Request

Plaintiff first argues that Defendants violated the ADA by providing a qualified reader and not accepting her preferred accommodation. (Doc. 21). Plaintiff maintains that she has always requested all correspondence be sent to her in an electronic format that is compatible with her screen reading software and that she has always refused the qualified reader as an accommodation. (*Id.*) She argues that she first made her request to DES employee Ms. Quayle in August of 2014. (Doc. 108 at ¶8). Plaintiff argues that Ms. Quayle failed to document the request and that DES did not provide the requested accommodation. (*Id.*) In support of her allegations, Plaintiff provides DES's internal procedures for handling ADA accommodations requests. (Doc. 108 at 37). Therein, Plaintiff has written her own commentary after the statement that a DES employee shall have the customer sign the "J-930-A" form for requesting an accommodation, writing "she never did" in the margins. (*Id.*) This is not relevant evidence supporting Plaintiff's assertions.

---

[8] At a previous hearing, and in previous Orders, the Court informed Plaintiff that even though she chose to represent herself in this matter she would be held to the same standard as any attorney appearing before the Court and would be required to follow all Federal and Local Rules. (Doc. 85 at 1-2).

[9] Plaintiff does not argue that she did not have an adequate amount of time to conduct discovery.

- 10 -

The evidence establishes that Plaintiff requested "verbal and/or/audible communication with any future correspondence" as an accommodation for her visual impairment in 2014. (Doc. 108 at 45). Within two weeks of receiving Plaintiff's request, Defendants provided Plaintiff with a qualified reader,[10] DES employee, Ms. Quayle. While Plaintiff disputes that Ms. Quayle was "qualified" to be a reader, alleging that Quayle had "no ADA training," Plaintiff cites to no evidence in the record for this assertion. (Doc. 121 at 2). Plaintiff also disagrees that she accepted the accommodation of a qualified reader, stating in her Statements of Fact that she "did not hang up on [Quayle] out of courtesy," but that she "made it clear she was not accepting it as an accommodation." (*Id.*) There is no evidence in the record, other than Plaintiff's own unverified statements, that she did not accept the qualified reader accommodation prior to her 2017 Notice of Claim. To the contrary, the evidence of record establishes that Plaintiff requested this accommodation as testified to in her May 2019 deposition:

> Question: So we have talked about the conversion accommodation, which is so that your phone can read documents electronically. Is that the accommodation you were asking for way back in 2014 when you asked, when you put in your letter to Clarence Cater, "verbal, slash…audible?"
>
> Plaintiff: It's not a, it's not a specific accommodation, because there are several accommodations I would have accepted.
>
> Question: Did you have a discussion with anybody about the accommodations that you would have accepted?
>
> Plaintiff: No one has asked…I mean, I have said electronic, I'm trying to think if Sue and I talked about that. It's possible that we had a discussion about other things that DES could do to satisfy the accommodations, but I do not remember for sure.

---

[10] The ADA establishes that a "qualified reader" is a "person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary," and is an acceptable auxiliary aid for the visually impaired. 28 C.F.R. § 35.104.

> Question: Tell me what accommodation were you looking for when you said you wanted a verbal and/or/audible communion with any further correspondence from DES.
>
> Plaintiff: Verbal meaning spoken language, audible, that you can hear.

(Doc. 113-1 at 13-14; Doc. 123 at 3).

DES argues that it has worked to ensure that it was providing Plaintiff reasonable accommodations from the time that she made the request to the agency in 2014. The evidence of record supports this. Moreover, while Plaintiff now argues that "the reading of a document over the phone is not an acceptable ADA accommodation," the use of a qualified reader is specifically contemplated by the statute as an appropriate accommodation.[11] (Doc. 107 at 8). In fact, Plaintiff acknowledges that she requested this accommodation. In responding to Defendants' statement that Plaintiff requested an accommodation by "*text, phone*, or email," Plaintiff states that she "does not deny this." (Doc. 119 at 2) (emphasis added). Plaintiff's May 2016 letter which confirmed that she still required "*audio contact by phone*, text, or email" supports that Plaintiff considered "audio contact by phone" to be a reasonable accommodation. (Doc. 112 at 4; Ex. F) (emphasis added). As late as the filing of her SAC in June of 2018, Plaintiff "restated her request for correspondence in an *audible form*." (Doc. 21 at 5) (emphasis added). Plaintiff requested this accommodation *numerous* times, and there is no admissible evidence in the record to establish that Plaintiff objected to the qualified reader, prior to 2017.

Moreover, by all accounts, including Plaintiff's, Ms. Quayle provided countless hours of support to Plaintiff as her qualified reader, and Plaintiff was very satisfied with the accommodations provided by DES through Ms. Quayle. (Doc. 113-1 at 26). There is

---

[11] In her Motion for Summary Judgment, Plaintiff brings up, apparently for the first time, that she would never have accepted a qualified reader as an accommodation because she has a second disability that she rarely discloses, called auditory distortion. (Doc. 107 at 9). With regard to that disability, Plaintiff states that "repetition, speech speed and context are the only accommodations that help in communication." (*Id.*) This disability is not alleged in Plaintiff's SAC, nor is there any evidence in the record that Plaintiff requested an accommodation of Defendants for this disability or that Defendants were aware of it.

no evidence in the record that Defendants were not providing a reasonable accommodation between 2014-17 when they provided Plaintiff with a qualified reader, an accommodation that was specifically requested by Plaintiff numerous times and is contemplated by the statute. *See* 28 C.F.R. § 35.104(2). Nor has Plaintiff established, prior to her 2017 Notice, that she requested any accommodation other than a qualified reader. Therefore, Plaintiff has not met her burden of establishing a violation of the ADA or Rehabilitation Act for the period between her 2014 accommodation request and her 2017 Notice of Claim.

### 2. 2017 Notice of Claim

As to the accommodation request contained in her 2017 Notice, Plaintiff does not dispute that DES is now converting correspondence into electronically readable documents. She admits that this is her preferred accommodation. (Doc. 107 at 1; Doc. 121 at 1). However, Plaintiff essentially alleges that Defendants acted unreasonably due to the amount of time it took for her new requests to be put into place.

Within a few weeks after Plaintiff filed her Notice of Claim, DES employee Monica Sheble contacted Plaintiff to determine precisely the accommodation she was requesting. (Doc. 112 at 5). It is undisputed that after DES had clarified Plaintiff's request, and after that request had been approved by the Deputy Director of DES Operations, Ms. Quayle was trained on the conversion of documents in September of 2017. (Doc. 112-1 at 53). Nina Ferrer, Deputy DES Human Resources Administrator, emailed Ms. Quayle following up on the training and sent written instructions on converting documents for Plaintiff in September of 2017. (Doc. 112-1 at 44). Subsequent to the training, a number of months passed before a notice originated for Plaintiff; therefore, initially, there were no notices for Ms. Quayle to convert. (*Id.*) When the next notice did arrive months later, Ms. Quayle was unable to convert the document. Therefore, she called Plaintiff and read the document to her as she had done for the past three years, remaining available to help Plaintiff in any way. (*Id.*) Ms. Quayle did not tell her supervisors or ask anyone else for assistance initially. (*Id.*) When

1  DES discovered that Quayle had technological issues with the conversion process, Quayle received additional training and thereafter began sending all of Plaintiff's correspondence over email in June of 2018. (*Id.*)

Defendants acknowledge that there was a lapse in Plaintiff receiving electronically converted documents after her 2017 request, which resulted in a few letters being read to Plaintiff by a qualified reader rather than being converted. However, there is no evidence in the record that Plaintiff did not receive this correspondence. While Plaintiff did not receive her preferred accommodation for a few months, there is no requirement that a defendant provide a plaintiff with her preferred accommodations at all times. *See Memmer,* 169 F.3d at 633-34. Rather, Plaintiff has the burden to "establish the existence of specific reasonable accommodations that [the defendant] failed to provide," as well as how the accommodations offered by the defendant were not reasonable. *Id.* Plaintiff has not done so here.

As to the current accommodations she is receiving, Plaintiff does not dispute that Defendants have assigned a specific Special Assistance Worker to her case to convert and send all of her notices, and to be available to assist Plaintiff with any issues related to her accounts. Moreover, while Plaintiff generally objects to Defendants' arguments that they are currently providing her with her preferred accommodation, these arguments are contrary to the evidence of record. While not contesting that Defendants have converted her correspondence to an accessible format per her wishes since 2018, Plaintiff disputes that this is her preferred accommodation because "it was not the only option presented by Plaintiff as a reasonable accommodation." (Doc. 121 at 4). These arguments are unavailing. Simply put, the record establishes that Plaintiff is receiving her preferred accommodation. The fact that there may have been other accommodations contemplated by Plaintiff does not negate this.

The Court agrees with Plaintiff that it cannot be said that Defendants provided a perfect accommodation at all relevant times. And while Defendants acknowledge that there were some mishaps and the accommodations provided were not always "perfect,"

the law does not require a perfect accommodation, only a reasonable one. *See Updike*, 870 F.3d at 951-52. As discussed above, Plaintiff has not provided evidence to dispute that the use of a qualified reader after her 2017 Notice of Claim was reasonable. Therefore, the Court finds that Defendants took appropriate steps in providing a reasonable accommodation when they provided a qualified reader after Plaintiff's 2017 Notice of Claim, until the conversion accommodation was in place. *See Memmer,* 169 F.3d at 633-34. The evidence of record establishes that Defendants have provided, and continue to provide, a reasonable accommodation to Plaintiff. Plaintiff has not produced admissible evidence to establish a dispute of material facts and therefore, there are no triable issues. *See Anderson*, 477 U.S. at 249. Finding no material facts in dispute that would prevent the entry of judgment in Defendants' favor as to the ADA and Rehabilitation Act claims, Defendants' Motion will be granted. Because of the Court's finding that Defendants were providing a reasonable accommodation, Plaintiff cannot establish that Defendants were deliberately indifferent to her requests, and therefore, her request for compensatory damages also fails. *See Duvall*, 260 F.3d at 1139.

**B.     Injunctive Relief**

Plaintiff also seeks a permanent injunction and asks the Court to "order all communications from the Defendant sent in hard copy format be sent as a searchable PDF document or word document via email."[12] (Doc. 107 at 1). Because the Court finds herein that Plaintiff did not succeed on the merits of her case, her request for injunctive relief fails. *See Center for Biological Diversity v. Mattis,* 868 F.3d 803, 827 (9th Cir. 2017).

Even had Plaintiff succeeded on her claims, she offers no evidence of a "real or immediate threat" that she would be "wronged again" by Defendants that would allow the Court to enjoin future behavior. Indeed, Plaintiff does not even argue the first three

---

[12] In addition to her requests for injunctive relief against DES, Plaintiff also requests the Court to enter a permanent injunction against Arizona Attorney General ("AG") Mark Brnovich. However, Plaintiff did not name the AG as a Defendant in this matter and she requests this relief for the first time in her Motion for Summary Judgment. (Doc. 107). This relief is not requested in the SAC, nor is the AG a party to this lawsuit and the Court will not address this request.

elements—the presence of an irreparable injury, that monetary damages are inadequate to compensate her injury, and that a remedy in equity is warranted. *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Plaintiff admits that she is now receiving an accommodation that she requested. The evidence of record indicates that the alleged wrongful conduct will likely not recur, given that Defendants have a system in place for providing Plaintiff her preferred accommodations. (Doc. 112 at 1). Plaintiff has not met her burden of showing that Defendants' alleged wrongful behavior will likely recur, nor has she succeeded on her claims; therefore, Plaintiff is not entitled to injunctive relief and the Court will grant Defendants' Motion for Summary Judgment.

## V. Conclusion

While the Court is sympathetic to Plaintiff's challenges, she has simply not met her burden of establishing material facts, supported by admissible evidence, that would prevent the entry of summary judgment for Defendants. While the Court recognizes that this result will not be desirable to Plaintiff, it is apparent that DES has taken serious steps to modernize its process for visually impaired individuals as a result of Plaintiff's litigation. DES provides evidence that it has created a new team of employees—Special Assistance Workers—devoted to ensuring that visually impaired individuals enrolled in DES programs receive one-on-one support to obtain their preferred accommodation whenever possible. (Doc. 112 at 1). Defendants provide that with these new safeguards in place, its standard work procedures are continually being improved as new issues arise and are identified by its members. (Doc. 112 at 3). Due to Plaintiff's efforts, countless other visually impaired Arizonans will benefit.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 111) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 107) is **denied as moot**. The Clerk of Court shall kindly enter judgment in favor of

Defendants and terminate this matter.

Dated this 28th day of February, 2020.

_____
Honorable Diane J. Humetewa
United States District Judge